**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | |
| **LARRY W. KELLY, JR.** | **NO. 15-00148-BAJ-EWD** |

**RULING AND ORDER**

Before the Court is Defendant's counseled **Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 91)**. The Government opposes Defendant's Motion (Doc. 102). For reasons explained below, Defendant's Motion will be denied.

## I. BACKGROUND

On March 22, 2016, a jury convicted Defendant of unlawful possession of a firearm by a convicted felon, the sole count set forth in the superseding indictment. (*See* Docs. 34, 43). The evidence at trial established that on the late afternoon of April 14, 2015, Defendant and his father, Larry Kelly, Sr. ("Mr. Kelly"), got into a heated argument on Boyd Avenue in Baton Rouge, Louisiana, which culminated when Defendant drew a gun, waved it in his father's direction, and then drove away in a black Cadillac. A neighbor, Kenna Williams, witnessed the altercation, and testified that she observed Defendant brandish a gun.

Mr. Kelly called 911, told the dispatcher that Defendant threatened him with a gun, and fled in a black Cadillac. Mr. Kelly further informed the dispatcher that Defendant was wearing jeans and a white t-shirt.

Baton Rouge Police ("BRPD") immediately responded to the 911 dispatch. Minutes later, BRPD officers spotted a black Cadillac approximately one-half mile from where Mr. Kelly called 911. As BRPD officers approached the black Cadillac to investigate, Defendant stopped the car, jumped out, and fled. At this time, BRPD Officer James Crisler observed Defendant carrying a distinctive gun in his right hand—a gray revolver with a long barrel. Officer Crisler gave chase, and seconds later apprehended Defendant after Defendant jumped a fence and inadvertently collided with a second BRPD officer.

When the police apprehended Defendant he was wearing a gray t-shirt and blue jeans. Defendant did not have a gun in his possession, and when questioned about it stated that he did not have a gun. Thereafter, the officers double-backed and within five minutes recovered the distinctive revolver along Defendant's flight path.

At trial, Defendant stipulated that he had been previously convicted of one unnamed felony offense. (Doc. 42).

On September 27, 2016, the Court sentenced Defendant to 262 months imprisonment. (Doc. 75). Relevant here, the Court based Defendant's sentence on its finding that Defendant was previously convicted of three violent felony offenses—specifically, simple robbery, aggravated battery, and second degree battery, all under Louisiana law—thus triggering the Armed Career Criminal ("ACCA") sentencing enhancement, 18 U.S.C. 924(e). (Doc. 76).

On December 6, 2017, the U.S. Court of Appeals for the Fifth Circuit affirmed Defendant's conviction and sentence. Thereafter, on April 2, 2018, the U.S. Supreme Court denied review of Defendant's case. (Doc. 90).

On April 1, 2019, Defendant, through counsel, filed the instant Motion seeking relief under 28 U.S.C. § 2255, and asserting four claims of ineffective assistance of trial counsel. (Doc. 91). On March 4, 2020, Defendant supplemented his original habeas petition to add a fifth claim, attacking the sufficiency of the evidence against him. (*See* Docs. 92, 95). In sum, Plaintiff seeks to have his conviction and sentence vacated on the following grounds:

- Counsel was ineffective for having failed to conduct an adequate pretrial investigation (Doc. 91 at 5);
- Counsel was ineffective for having failed to object to application of the ACCA enhancement at sentencing (*id.* at 6);
- Counsel was ineffective for having failed to request a mistrial after the jury observed Defendant in shackles (*id.* at 8);
- Counsel was ineffective for having prevented Defendant from testifying at trial (*id.* at 9); and
- The evidence against Defendant was insufficient to support his conviction because the Government failed to submit proof that Defendant knew about his status as a convicted felon at the time of the instant offense (Doc. 92).

The Government opposes Defendant's Motion. (Doc. 102). A hearing on this matter is not necessary.

## II. LAW AND ANALYSIS

Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Specifically, the statute sets forth four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426–27 (1962). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing." 28 U.S.C. § 2255(b).

A defendant seeking relief under section 2255 must plead sufficient facts to establish a prima facie case of a constitutional violation. *United States v. Woods*, 870 F.2d 285, 287 (5th Cir. 1989) "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* at 288 n.3.

The Court addresses Defendant's claims in the order they are presented in Defendant's Motion and Supplement.

### A. Defendant has failed to show ineffective assistance of counsel

The majority of Defendant's claims focus on counsel's performance, and question whether he received effective assistance throughout the proceedings against

him. The Sixth Amendment guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them." *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001). This right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. at 5, 124 (2003).

The Court reviews claims of ineffective assistance of counsel under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The Defendant must show: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense—i.e., "there is a reasonable probability that but for counsel's poor performance the result of the proceeding would have been different." *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). "Both of these prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

> Importantly, judicial scrutiny of counsel's performance must be highly deferential. When evaluating the first *Strickland* criterion, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Further, we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quotation marks and citations omitted).

**1. Defendant was not prejudiced by counsel's alleged failure to conduct an adequate pretrial investigation**

Defendant's first complaint is that counsel rendered ineffective assistance by failing to conduct a comprehensive pretrial investigation, which allegedly would have identified additional witnesses to aid his defense. Specifically, Defendant asserts:

> 1) Counsel failed to present exculpatory and mitigating evidence from defendant's father, Larry Kelly, Sr., who if called to testify would have stated that he was a drug user, thus his credibility regarding his statements that [Defendant] possessed firearm could have been impeached for lack of credibility;
>
> 2) Counsel failed to present exculpatory and mitigating evidence from defendant's uncle, Bobby Clark, who if called to testify would have stated that he did not see Larry Kelly brandish a firearm on Kelly, Sr., and would have further testified that Larry Kelly, Sr., was intoxicated and the aggressor during defendant's altercation with Larry Kelly, Sr.[.]

(Doc. 91 at 5).[1]

As an initial matter, the Court is mindful that "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986); *see also id.* ("Where the only evidence of a missing

[1] Defendant also asserts (without elaboration) that counsel was ineffective for failing "to locate and interview the only known alleged eyewitnesses to defendant's encounter with his father that led to his arrest and conviction in this case," and for failing "to obtain and present an expert witness on the fallacies of eyewitness testimony." (Doc. 91 at 5). To assess these claims, the Court would, at minimum, need to know the identities of these proposed additional witnesses, the substance of their proposed testimony, and/or how such testimony would undermine the Government's case. Having failed to provide any information regarding these critical facts, Defendant plainly cannot establish a prima facie case of a constitutional violation. The Court dismisses these claims on this basis. *See Woods*, 870 F.2d at 288 n.3 ("[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.").

witness' testimony is from the defendant, this Court views claims of ineffective assistance with great caution."). Nonetheless, the Court will *assume* for present purposes that counsel conducted no investigation into these additional witnesses, and that, therefore, counsel's performance in this regard was deficient.

Still, however, Defendant's claim fails because he cannot establish prejudice. First, there is no evidence in the record to suggest that Mr. Kelly *was* intoxicated when he called 911. Indeed, the evidence suggests the opposite, insofar as Mr. Kelly (1) properly identified himself and relayed accurate details to the 911 dispatcher that ultimately resulted in Defendant's apprehension and arrest, and shortly thereafter (2) provided a cogent statement to Baton Rouge Police regarding the events leading to his 911 call (including that Defendant was brandishing the distinctive "long barrel revolver") (Doc. 102-1 at 25-26). *Cf. United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008) (eyewitness 911 calls reporting emergency situations enjoy a "presumption of reliability" particularly when the caller identifies himself).

Second, and equally important, Mr. Kelly's account that his son possessed a gun (captured in the 911 recordings and the police reports) was corroborated by two *additional* witnesses: Ms. Williams, who observed Defendant brandish the gun during the altercation with his father; and Officer Crisler, who saw the gun in Defendant's right hand prior to giving chase. Even if Mr. Kelly or Mr. Clark had appeared at trial and provided testimony that Mr. Kelly was intoxicated at the time of the altercation, or was otherwise unable to accurately recall the events leading up

to his 911 call, such testimony would not undermine the reliability of Ms. Williams and Officer Crisler, who each *also* witnessed Defendant possessing the gun.

In sum, it is hardly likely—much less reasonably probable—that the results of Defendant's trial would have been different had counsel called Mr. Kelly or Mr. Clark to testify. Defendant cannot prove prejudice and his claim fails.

**2. Counsel's performance was not deficient and Defendant was not prejudiced by counsel's failure to object to application of the ACCA enhancement at sentencing**

Next, Defendant complains that counsel was ineffective for having failed to object to the application of the ACCA based on prior Louisiana convictions of (1) simple robbery, docket number 07-03-262, 19th Judicial District Court, Baton Rouge, Louisiana; (2) aggravated battery, docket number 07-03-0007, 19th Judicial District Court, Baton Rouge, Louisiana; and (3) second degree battery, docket number 41880, 8th Judicial District Court, Winnfield, Louisiana. (Doc. 91 at 6). Here, again, Defendant's claim fails.

First, the Fifth Circuit has repeatedly affirmed that "the Louisiana crime of simple robbery qualifies as a violent felony under the ACCA as a matter of law." *United States v. Brown*, 437 F.3d 450, 453 (5th Cir. 2006). Accordingly, Defendant cannot establish deficient performance or prejudice based on counsel's failure to object to this predicate offense.

The law is not quite as clear regarding whether Defendant's Louisiana convictions of aggravated battery and simple battery necessarily qualify as violent

offenses for ACCA purposes. *But see United States v. White*, No. 04-cr-20076, 2019 WL 898572, at *4 (W.D. La. Feb. 21, 2019) (James, J.) ("In the opinion of this Court, the result of [*United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018)] is that a conviction under Louisiana's aggravated battery statute is properly considered a violent felony under the elements clause of section 924(e) because the offense requires the use, attempted use, or threated use of force (direct or indirect) against another."). Still, the factual bases underpinning Defendant's battery convictions, set forth in his Louisiana state court plea colloquies, establish that they were properly counted as violent felonies in this instance. *See Shepard v. United States*, 544 U.S. 13, 26 (2005) (instructing courts to look to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information" when determining whether an offense qualifies as a violent felony for ACCA purposes). These records establish that on July 6, 2004, Defendant pleaded guilty to aggravated battery for having shot an off-duty police officer on May 6, 2003. (*See* Doc. 102-3 at 15-16). They further establish that on April 19, 2010, Defendant pleaded guilty to second degree battery for his involvement in an October 28, 2009 prison fight which resulted in substantial bodily injury to another inmate. (*See* Doc. 102-7 at 12). Plainly, each of these offenses involved the use of force against another, thus satisfying the requirements for a "violent felony" under the ACCA. *See* 18 U.S.C. § 924(e)(2)(B)(i). Thus, again, counsel's performance was not deficient, and

Defendant suffered no prejudice by counsel's failure to object to these predicate offenses.

**3. Defendant was not prejudiced by counsel's failure to request a mistrial after the jury observed Defendant in shackles**

Next, Defendant asserts that counsel was ineffective for failing "to request a mistrial when, during a trial recess, defendant appeared in shackles in the courtroom as the jury was exiting the same courtroom." (Doc. 91 at 8). Here, again, even if the Court *assumes* counsel's performance was deficient, the record dispels any concerns that Defendant was prejudiced.

The incident in question occurred on May 21, 2016—the first day of trial—during voir dire. Defense counsel requested a bathroom break on Defendant's behalf, stating that Defendant was "having a hard time." (Doc. 81 at 105). The Court accommodated Defendant's request, advising "We'll take a very brief break," so as to avoid unduly delaying the voir dire. (*Id.*). After instructing the venire not to discuss the case among themselves or with others, the Court excused the jurors and immediately thereafter advised the U.S. Marshals to remove Defendant from the Courtroom. (*Id.* at 107-08). The Marshals began removing Defendant before all jurors had exited.

Following the break, counsel raised the issue to the Court's attention, stating "I don't think it was intentional on the court's part. I think it was just, we were trying to get people out and get -- but the jurors had just begun to leave and only a few were

gone when you instructed the marshals to remove him from the courtroom." (*Id.* at 108-09). Counsel noted Defendant's objection for the record, but did not request a mistrial.

The Fifth Circuit advises that "brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial; in such cases, defendants bear the burden of affirmatively demonstrating prejudice, which we refuse[] to infer from isolated incidents." *United States v. Turner*, 674 F.3d 420, 435 (5th Cir. 2012). Here, Defendant's exposure was inadvertent, isolated, and brief—amounting to seconds—and Defendant fails to offer affirmative proof that he was prejudiced as a result. On the other hand, the proof of Defendant's guilt was substantial. Thus, again, even if the Court *assumes* counsel's performance was deficient, the record dispels any concerns that the jury was biased by its brief view of Defendant in shackles, and Defendant's claim fails. *See United States v. Ramirez-Rodriguez*, 56 F.3d 1385, 1995 WL 337777, at *3 (5th Cir. 1995) ("In his brief, Ramirez himself characterizes this alleged encounter where the jurors saw him as 'inadvertent.' Moreover, in no way does Ramirez affirmatively demonstrate any prejudice. Rather, Ramirez merely suggests that there is a 'very distinct possibility' that the jury was biased by this incident. In light of the substantial evidence of Ramirez' guilt, this is not sufficient to meet the prejudice prong of the Strickland test for ineffective assistance of counsel.").

**4. Defendant's claim that counsel "ordered" him not to testify is contradicted by the trial record**

Next, Defendant alleges that counsel was ineffective for having prevented him from testifying at trial. (Doc. 91 at 9). Defendant states (in full):

> Defendant urges that he wanted to testify on his own behalf in this matter, but his trial counsel "ordered" him not to do so. Only a knowing, voluntary and intelligent waiver by the defendant himself is sufficient to relinquish a defendant's right to testify. Because defendant's desire to testify was overcome by the order of his attorney, such a waiver did not occur in defendant's case.

(*Id.*).

"The right to testify is a fundamental right, that is personal to the defendant; therefore, only the defendant can waive that right, voluntarily and knowingly." *Bower v. Quarterman*, 497 F.3d 459, 473–74 (5th Cir. 2007) (citations omitted). Still, however, "[a] defendant who argues that his attorney prevented him from testifying must … satisfy the two prongs of *Strickland*." *Id.* (quotation marks omitted). The Fifth Circuit instructs that "there is a strong presumption that counsel's decision not to place a defendant on the stand was sound trial strategy. Nonetheless, counsel cannot override the ultimate decision of a defendant who wishes to testify contrary to counsel's advice." *Id.* (quotation marks and alterations omitted).

This claim also fails, for multiple reasons. First, the record unequivocally shows that Defendant knew of his right to testify in his defense, and, further, was capable and ready to make a voluntary decision *not* to testify. On the first day of trial,

prior to presentation of any evidence and outside the jury's presence, the Court engaged Defendant in the following colloquy:

> THE COURT: All right. Now, it is also my duty, Mr. Kelly, to inform you that during this trial you have the right to present evidence in your own defense. Do you understand that, sir?
>
> MR. KELLY: Yes, sir.
>
> THE COURT: You're not required to put on any evidence, of your guilt or innocence. Do you understand that, sir?
>
> MR. KELLY: Yes, sir.
>
> THE COURT: It is also your right to testify in your own defense in this case. Do you understand that, sir?
>
> MR. KELLY: Yes, sir.
>
> THE COURT: It is also your right to, again, present any evidence in your defense. Do you understand that?
>
> MR. KELLY: Yes, sir.
>
> THE COURT: In fact, it's your right to not testify in your own defense. Do you understand that, sir?
>
> MR. KELLY: Yes, sir.
>
> THE COURT: Do you understand that if you presented evidence -- if you fail – if you elected not to present any evidence, and/or -- or if you elected not to testify, the fact that you have made these decisions; that is, to not testify and to not put on evidence, could not be held against you. That the jury will be instructed not to draw any adverse inferences from your decisions. Do you understand that, sir?
>
> MR. KELLY: Yes, sir.
>
> THE COURT: All right. Finally, do you have any questions about that, sir?
>
> MR. KELLY: No, sir.

> THE COURT: Do you have any questions about anything you can do or cannot do with respect to this trial?
>
> MR. KELLY: No, sir.
>
> THE COURT: Do you have any questions about your right to testify or not testify or to present evidence or not to presence evidence in the case?
>
> MR. KELLY: No, sir.

(Doc. 81 at 173-75).

As demonstrated above, Defendant repeatedly and without hesitation assured the Court that he understood his constitutional right to choose whether to testify in his defense. Whatever Defendant's current misgivings, it is clear from his own statements that, at the time of trial, he made an informed decision. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). On this record, and absent any evidence whatsoever that Defendant's will was overborne by counsel, the Court determines that Defendant's decision not to testify was his own, and that Defendant's failure to take the witness stand was exactly what it appeared to be: "sound trial strategy." *Bower*, 497 F.3d at 473 (quotation marks omitted); *cf. United States v. Flores-Martinez*, 677 F.3d 699, 711 (5th Cir. 2012) (indicating that a district court may "rely upon counsel's representations—made in the defendant's presence—as to the defendant's intentions" regarding whether to testify).

Second, and on a closely-related note, Defendant's threadbare allegations are too thin to establish that a constitutional violation occurred. Again, the record makes crystal clear that Defendant understood his right to testify (or not), and had no

questions or hesitations about whether to exercise that right. By contrast, Defendant's habeas petition states without elaboration that counsel was ineffective because "he wanted to testify on his own behalf in this matter, but his trial counsel 'ordered' him not to do so." (Doc. 91 at 9). Defendant's unsubstantiated about-face is not credible in light of his statements to the Court, and cannot state a claim for relief. *See Blackledge*, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Finally, and in any event, even if the Court accepts Defendant's allegation that counsel "ordered" him not to testify, and *assumes* that counsel's performance was deficient as a result, Defendant's claim still fails because (again) his allegations fall well-short of establishing prejudice. Defendant's petition provides no indication whatsoever what his testimony would have been. Presumably, Defendant would have insisted on his innocence, but considering the overwhelming evidence of Defendant's guilt—which included multiple eyewitness accounts of Defendant possessing a firearm—it is nearly impossible this testimony would have made any difference. Moreover, had he taken the stand, the jury would have heard of his extensive criminal history. On this record, the Court cannot conceive of anything Defendant could have said that would have provided *any* reasonable possibility of a different outcome. *See Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) ("[Defendant's] self-serving conclusory statement that his testimony would have resulted in an acquittal,

standing alone, falls far short of satisfying *Strickland's* prejudice element."); *see also United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) ("The difficulty is that a denial by [Defendant] from the stand would come at a high price. It would juxtapose a police officer whose account is supported by [Defendant]'s signed statement with a felon with a large incentive to lie. If [Defendant] took the stand his extensive criminal record and drug use would have come into evidence. The likelihood that the jury would credit the felon over the police officer whose testimony is supported by the defendant's signed statement does not meet the reasonable probability of a different outcome test. We can say only that his testimony *might* have persuaded, but not that there is a reasonable probability that it would have done so.").

**B. Defendant was not prejudiced by the Government's failure to present direct evidence of his felon status**

Finally, Defendant contends that his conviction must be overturned because the Government failed to present direct evidence at trial that Defendant knew he was a convicted felon when he committed the instant offense. For this claim, Defendant relies on *Rehaif v. United States*, where the U.S. Supreme Court clarified that to secure a conviction under 18 U.S.C. § 922(g), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S.Ct. 2191, 2200 (2019).[2]

---

[2] The Government concedes that *Rehaif* established a new rule of statutory law, and is therefore retroactively applicable to Defendant's case on collateral review. (Doc. 102 at 32).

The Fifth Circuit has held that to prevail on a *Rehaif* claim, the Defendant "must show that any error under *Rehaif* actually prejudiced the outcome" of his case. *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2807 (2021). Moreover, the Fifth Circuit has instructed that, as a general rule, a defendant is *not* prejudiced by the Government's failure to present direct evidence that he knew of his felon status—and, therefore, *cannot* prevail in a *Rehaif* claim—where "the record contains substantial evidence that he knew of his felon status." *See id.* at 188 (quoting *United States v. Hicks*, 958 F.3d 399, 402 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2810 (2021)).

Here, there was more than enough circumstantial evidence to establish Defendant's knowledge of his status as a convicted felon. First, of course, there was Defendant's stipulation, wherein Defendant expressly admitted that "[p]rior to April 14th, 2015, [he] had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony, as contemplated by Title 18, United States Code, Section 922(g)(1)." (Doc. 42 at 1; *see also* Doc. 81 at 226).

Second, Defendant's own witness, Frank Askins, testified on direct examination that he knew Defendant because "[w]e did time together a while back." (Doc. 54 at 120). The fact that Defendant "did time" strongly supports a conclusion that Defendant knew of his felon status. *See Hicks*, 958 F.3d at 402.

Third, Defendant fled immediately upon encountering police. "[E]vidence of flight is a factor from which a jury could infer guilty knowledge." *United States v.*

*Quiroz-Hernandez*, 48 F.3d 858, 865 (5th Cir. 1995). The Government argued this point expressly in closing, stating:

> …[A]ctions speak louder than words. It's as old as time. Flight is a fact which may be considered by you [when] determining whether the defendant has possessed the gun. It essentially is consciousness of guilt. You run because you got the gun and you know you're a felon.

(Doc. 54 at 154).

Finally, Defendant discarded the revolver as he was fleeing police. Again, this fact strongly supports a conclusion that Defendant knew of his felon status, and further knew that, as a result, he was prohibited from possessing a firearm, because it indicates that he was fearful of being apprehended with a firearm.

Taken together, this evidence provided the jury more than enough information to conclude that Defendant knew he was a felon when he possessed the revolver on April 14, 2015.[3] As such, Defendant suffered no prejudice as a result of the Government's failure to produce direct evidence of the same, and Defendant's *Rehaif* claim also fails.

### C. Defendant is not entitled to a certificate of appealability

Reasonable jurists would not debate the denial of Defendant's § 2255 Motion, or the correctness of the Court's substantive rulings that Defendant has failed to make a substantial showing of the denial of a constitutional right. Accordingly,

---

[3] Because the Court determines that Defendant's *Rehaif* claim fails on the merits, it does not reach the Government's alternative argument that this claim is procedurally barred. (*See* Doc. 102 at 35-40).

Defendant will be denied a certificate of appealability. *See United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997).

## III. CONCLUSION

In sum, Defendant has failed to show that he is entitled to relief.

Accordingly,

**IT IS ORDERED** that Defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 91) be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 8th day of December, 2021.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**